# Exhibit E

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. OFFICE OF PERSONNEL MANAGEMENT, et al., <br><br> Defendants. | Civil No. 1:25-cv-255-RDA-WBP |

I, Vona S. Robinson, declare under penalty of perjury:

1. I currently serve as the Deputy Assistant Commissioner for Federal Disbursement Services at the Bureau of the Fiscal Service (BFS or the Bureau). I have been employed in this role since October 2022; prior to that, I served as Executive Director Federal Disbursement Services from February 2019 to October 2022. I report to Linda Chero, Assistant Commissioner, Disbursing and Debt Management. I am a career civil servant.

2. In my current role, I oversee, among other things, the Bureau's Federal Payment Operations. My office is responsible for disbursing 87.8% of the U.S. Government's payments valued at 5.46 trillion dollars annually. My office works closely with BFS's Office of Transformation and Modernization, which is headed by Deputy Commissioner Joseph Gioeli. Mr. Gioeli's office is responsible for the integrity, operational efficiency, and security of the technological infrastructure, whereas the Office for Disbursement Services is responsible for overseeing the business processing of payment requests that come into BFS's payment systems.

3. In this role, I have extensive knowledge of the Fiscal Service business processes for the disbursement of federal payments. Information in this declaration is based on my personal knowledge and information made available to me in the course of my official duties. I provide this declaration in support of Defendants' opposition to Plaintiffs' Motion for a Temporary Restraining Order in the above-captioned case.

4. As described in the accompanying Declaration of Joseph Gioeli, BFS has multiple payment systems that are responsible for different tasks and processes; multiple of these systems are involved in BFS's engagement with the Treasury Department of Government Efficiency (DOGE) team. As relevant to the topics discussed in this declaration, Payment Automation Manager (PAM) is the primary application used by Treasury to process payments for disbursement, and it includes several component sub-systems, as discussed below. Secure Payment System (SPS) is another payment processing system, through which agencies securely create, certify, and submit payment files to Treasury; it is also typically used for one-time large dollar amount transactions.

5. Within PAM, PAM's "file system" receives payment files from payor agencies into its "landing zone," which is the existing system that ingests payment files before agencies certify the payments for processing. When payment files come into the "landing zone," they are transferred to the PAM application where the payment file is validated and a pre-edit report is generated and sent back to the Federal Agency that contains, among other things, information about potentially improper or fraudulent payments. The Federal Agency uses this report to certify the payments in the SPS system, after which the payments are processed consistent with the instructions within the file.

6. I am familiar with the Bureau's efforts to develop and implement a 4-6 week payment process engagement plan ("engagement") in which the Bureau would support the Treasury DOGE Team—which I understand consisted of Tom Krause and Marko Elez, until Mr. Elez's resignation on February 6, 2025. I understand that the purpose of the engagement was to understand BFS payment processes and identify opportunities to advance payment integrity and fraud reduction goals.

7. I am also aware of Treasury leadership's decision to approve a process that would assist agencies in complying with the President's January 20, 2025 Executive Orders requiring that certain types of foreign aid-related payments be paused, and I am familiar with the Treasury DOGE Team's collaboration with BFS staff, including some within my office, to help effectuate this decision.

8. I understand that, on or about January 26, 2025, Treasury leadership approved a process that would assist agencies in complying with the President's January 20, 2025 Executive Order on foreign aid. Specifically, the Bureau was directed to develop a process to identify all USAID payment files within the PAM file system's "landing zone," to flag those payments for the State Department as potentially implicated by the President's foreign aid Executive Order, prior to their entry into the PAM payment processing systems. The payment files would be shared with the State Department through a "secure portal" only accessible to authorized State Department employees. Before this process could get fully underway, however, on January 27, Treasury leadership informed BFS that State Department had decided to intercept the USAID files prior to the initial submission to BFS, and therefore it would not be necessary to continue

3

to flag any USAID payment files for the State Department's review.  Between January 26 and the revised decision on January 27, BFS did not receive any USAID payment files. [1]

9. On  January 27, 2025, the Office of Information and Security Services (ISS), a component of BFS, established the secure portal that would allow the authorized State Department officials to retrieve copies of the identified payment files consistent with the authorized process.

10. On January 31, the Bureau was directed to (1) identify incoming specific Agency payment files to the "landing zone" that met 4 specified Treasury Account Symbol (TAS)[2] codes,—I understand that those TAS codes had been associated with categories of payments that were not USAID payments, but which nonetheless may have been covered under the foreign aid Executive Order; (2) create a copy of the payment files with those TAS codes—the original payment files would remain in the landing zone to ensure payment integrity; (3) move those copies into a separate folder (the "MoveIT" folder) where they could be sent to authorized officials at the State Department for review; (4) deliver the copies to authorized staff at the State Department through a secure portal that was limited in access to certain designated Department of State officials, for same-day

---

[1] Several USAID payment files *were* received later, on February 4 and February 5—BFS received a separate authorization email from USAID copying State Department indicating that the files should move forward as scheduled, which they did.  No USAID payment files were received after February 5.

[2] A TAS is an identifier for a particular agency's account, which typically is associated with an individual agency appropriation, receipt, or other fund account. One TAS code was associated with the Millenium Challenge Corporation (MCC) and three TAS codes were associated with certain payments from the Department of Health and Human Services (HHS). These included two sub-accounts labeled "Refugee and Entrant Assistance, Admin for Children and Families," one account labeled "Gifts and Donations Office of Refugee Resettlement, Admin for Children and Families," and one account labeled "Refugee Resettlement Assistance, Administration for Children and Families, Health and Human Services."

review, and (5) allow those State Department officials to determine whether the Executive Order required a pause, or whether the original payment files should move forward into PAM's processing system for disbursement according to Treasury's normal payment processes.

11. At the outset, I understand that BFS career staff queried the PAM file system manually to identify payment files and shared those payment files with Mr. Elez for review through the MoveIT folder. I further understand that, at some point after January 31, Mr. Elez assisted in automating the manual review of the payment files.

12. On the afternoon of February 6, 2025, Mr. Elez resigned, and his electronic devices were returned to BFS and the Treasury Department.

13. On the morning of February 7, four payment files were flagged with a TAS associated with the "Refugee and Entrant Assistance, Admin for Children and Families" account, indicating that the State Department review should be conducted. At 2 p.m., the State Department indicated that the files could be processed normally, as the State Department determined it did not have authority over the payments under the Executive Order. The four payment files were then processed in the normal course that same day.

14. On February 10, the Department of Interior (DOI), Interior Business Center, which is a federal shared services provider and provides Financial Management Services among other things to Federal Agencies, submitted an international certified payment request on behalf of Millennium Challenge Corporation. The payment was forwarded to State Department for further review consistent with the established process. At approximately 2:00 pm eastern, the DOI certifying official (not the State Department representative) requested Fiscal Service to not process the payment.

15. As of February 10, we have ensured that the State Department review process will not proceed for payment requests within the scope of the TRO order issued in *New York v. Trump*, No. 1:25-cv-39-JJM-PAS (D.R.I.).

16. To the best of my knowledge, BFS has not failed to disburse any payment duly certified by a payor agency as a result of the Treasury DOGE Team's work. To date, no payments, with the exception of the single MCC payment mentioned above, have been delayed or canceled by the payor agency as a result of the re-routing and review process described herein.

I swear upon the penalty of perjury that the foregoing is true and correct.

Dated: 2/18/2025

*Vona S. Robinson*

Vona S. Robinson

Deputy Assistant Commissioner –
Federal Disbursement Services

Bureau of the Fiscal Service

U.S. Department of the Treasury