**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, et al., | |
| Plaintiffs, | Civil No. 1:25-cv-255-RDA-WBP |
| v. | |
| U.S. OFFICE OF PERSONNEL MANAGEMENT, et al., | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFFS' AMENDED COMPLAINT**

Defendants respectfully submit this Reply Memorandum in Support of their Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 51).

## ARGUMENT

The Court should grant Defendants' motion to dismiss. Plaintiffs have no standing to bring their claims, and even if they did, the Amended Complaint fails to plausibly plead any claim.

### I.       Plaintiffs Lack Standing.

Plaintiffs have failed to plausibly plead that they have suffered any injury in fact, for all of the reasons in Defendants' opening brief. *See* Defs.' Mem. in Support of Mot. to Dismiss Am. Compl. (ECF No. 55) ("Def. Br.") at 6-11. None of Plaintiffs' counter arguments cures that fundamental flaw in their case.

### A.       The Court should follow the Fourth Circuit's decision in *Bessent*, and not the District Court decision in *AFSCME*.

Plaintiffs' injury-in-fact argument, at bottom, is that this Court should follow *American Federation of State, County & Municipal Employees, AFL-CIO v. Social Security Administration*, No. 1:25cv596, 2025 WL 1141737 (D. Md. Apr. 17, 2025) ("*AFSCME*"), to find that the tort of intrusion upon seclusion is a close analogue for their asserted injury, because "[t]his case is no different" from and "on all fours with" *AFSCME*. Pls' Opp'n (ECF No. 57) ("Pl. Br.") at 4-5, 6-7. The Court should not follow *AFSCME* for three reasons.

First, the Supreme Court earlier this month stayed *AFSCME*'s preliminary injunction. *Soc. Sec. Admin. v. Am. Fed'n of State, Cnty., & Mun. Emps.*, 145 S. Ct. 1626 (2025). And contrary to Plaintiffs' attempt to minimize that ruling, *see* Pl. Br. 5 n.2, the Supreme Court specifically "conclude[d] that, under the present circumstances, SSA may proceed to afford members of the SSA DOGE Team access to the agency records in question in order for those members to do their work." *Am. Fed'n of State, Cnty., & Mun. Emps.*, 145 S. Ct. 1626.

1

Second, the Fourth Circuit—as explained in Defendants' opening brief, *see* Def. Br. 9—has already rejected the same intrusion-upon-seclusion argument in a challenge to DOGE teams' access to the same Treasury and OPM record systems at issue here. In *American Federation of Teachers v. Bessent*, the Fourth Circuit found that the alleged "abstract access to personal information" does not establish a concrete injury analogous to the tort of intrusion upon seclusion. *Am. Fed'n of Tchrs. v. Bessent*, No. 25-1282, 2025 WL 1023638, at *2 (4th Cir. Apr. 7, 2025) (Agee, J., concurring) ("*Bessent*"); *see id.* at *4-5 (Richardson, J., concurring). Plaintiffs try to distinguish *Bessent* on the ground that they "allege more than just the 'abstract access to personal information'" because their "personal information was *actually disclosed* and made known to DOGE and its affiliates in violation of federal law, causing fear, unease, and offense." Pl. Br. 6 (citing Am. Compl. ¶¶ 3, 4, 6, 83, 116, 118, 128, 135, 139, 143, 149, 156). But the *Bessent* plaintiffs also "complain[ed] that the agencies granted *unauthorized parties access* to their information," *Bessent*, No. 25-1282, 2025 WL 1023638, at *4 (Richardson, J., concurring), and "alleg[ed] that the continued and *ongoing disclosure* of their records to DOGE representatives constitute[d] a violation of the Privacy Act [because] . . . Education, OPM, and Treasury have given DOGE representatives unrestricted access to their PII," *Am. Fed'n of Tchrs. v. Bessent*, No. CV DLB-25-0430, 2025 WL 895326, at *6 (D. Md. Mar. 24, 2025). That is exactly what Plaintiffs allege here: "[b]y granting BFS payment system access to the Treasury DOGE Team, Secretary Bessent and the Treasury Department disclosed vast stores of PII contained in those systems to individuals not authorized by law to access them." Am. Compl. ¶ 83; *id*. ¶ 116 ("By granting EHRI system access to DOGE Team Members, OPM disclosed vast stores of PII contained in those systems to individuals not authorized by law to access them").

Third, *AFSCME* itself defeats Plaintiffs' this-case-is-the-same argument. The *AFSCME*

district court distinguished *Bessent*—which, again, involved the exact same Treasury and OPM record systems at issue here—*specifically because AFSCME* "differ[ed] markedly from *Bessent*, in several important respects." *AFSCME*, 2025 WL 1141737, at *3. And so did the Fourth Circuit, finding that *AFSCME* "[w]as substantially stronger . . . than *Bessent*, with vastly greater stakes for many reasons." *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, No. 25-1411, 2025 WL 1249608, at *4 (4th Cir. Apr. 30, 2025) (King, J., concurring). "Most especially" because *AFSCME* concerned "the Social Security records of everyone" whereas *Bessent* addressed the BFS and EHRI systems and thus "was limited to the two million or so plaintiffs." *Id*. And because *Bessent* addressed the same OPM and Treasury data systems that are at issue here, Plaintiffs are wrong to say the "only . . . information of two million or so plaintiffs" is "[a] contrast" to this case. Pl. Br. at 7.

Plaintiffs argue that this Court should follow *AFSCME* despite the Supreme Court having stayed it, the Fourth Circuit in *Bessent* having rejected the same intrusion-upon-seclusion argument for the same Treasury and OPM record systems, and both the Fourth Circuit and *AFSCME* itself having distinguished it from *Bessent* and thus from this case. The Court should not do so.

### B. Plaintiffs' alleged "unease and offense" are not the kind of harm necessary for an intrusion upon seclusion.

Plaintiffs next argue that they "have suffered the feeling of unease" that is "at the core of intrusion upon seclusion." Pl. Br. 7. Not so. As an initial matter, Plaintiffs cite in support of that argument only declarations from their preliminary injunction briefing, *id*. at 7-8, which are not before the Court on Defendants' motion to dismiss. In any event, Plaintiffs again rely on *AFSCME* to argue that they "have 'described the kind of 'unease' that Judge Richardson regards as integral to an intrusion upon seclusion claim'" because of their alleged anxiety and distress. *Id*. (quoting

*AFSCME*, 2025 WL 1141737, at *31).[1]

    *AFSCME* misreads *Bessent*, where the plaintiffs alleged the same "major distress and anxiety." *Bessent*, 2025 WL 895326, at *6 ("The purportedly unlawful disclosures to DOGE representatives have caused the plaintiffs major distress and anxiety, as they do not know who their data has been or will be shared with, whether these disclosures have made them vulnerable to further privacy breaches, and how it may be weaponized against them.") (cleaned up). Judge Richardson rejected that argument, reasoning that intrusion upon seclusion guards against a particular type of harm: the "harm [that] is felt when a reporter accosts a convalescing patient in the hospital, when a private detective peers through a neighbor's bedroom window for weeks, and when a photographer snaps an opportunistic photo of a woman's underwear." *Bessent*, No. 25-1282, 2025 WL 1023638, at *4 (Richardson, J., concurring). And that type of harm was "distinct from the plaintiffs' alleged harm of unauthorized access." *Id*. So too here. Plaintiffs' alleged "unease and offense," Am. Compl. ¶ 125, about Treasury and OPM employees being granted access to large databases that somewhere contain their personal information is not the same as the harm "felt . . . when a photographer snaps an opportunistic photo of a woman's underwear." *Bessent*, No. 25-1282, 2025 WL 1023638, at *4. And because intrusion upon seclusion protects against that particular type of privacy harm—and because "Article III standing requires a concrete injury even in the context of a statutory violation," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021) (internal quotation marks and citation omitted)—Plaintiffs are incorrect that they have sufficiently pleaded concrete harm simply by alleging statutory violations. *See* Pl. Br. 9.[2]

---

[1] *AFSCME* is on Westlaw at both 2025 WL 1141737 and 2025 WL 1206246. The former is the slip copy, the latter the reported. Plaintiffs cite to both. *Compare* Pl. Br. 4-5, *with id.* at 7-8.

[2] Plaintiffs' mischaracterize Defendants as arguing that "federal law can only work a concrete harm if the recipient of the information is 'outside the government.'" Pl. Br. 8 (citing Def. Br. 8).

## C.    The tort of breach of confidence is not a close analog.

Plaintiffs next argue—for the first time—that their claims "are closely analogous to the common law tort of breach of confidence," citing *Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Dep't of Lab.*, No. CV 25-339 (JDB), 2025 WL 1129227, at *9 (D.D.C. Apr. 16, 2025) ("*AFL-CIO*"). Pl. Br. 10. That argument fails for two reasons. First, Plaintiffs nowhere alleged that their harms were analogous to breach of confidence. *See generally* Am. Compl. They may not now add it. *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("[P]arties cannot amend their complaints through briefing."); *AFSCME*, 2025 WL 1141737, at *36 n.32 (discussing *AFL-CIO* analysis of breach of confidence but finding that "no such claim has been lodged here").

Second, breach of confidence only "lies where a person offers private information to a third party in confidence and the third party reveals that information to another," *AFL-CIO*, 2025 WL 1129227, at *9 (citation omitted), and "the harm involved in a breach of confidence is actual disclosure to a third party" of the person's private information, *Jeffries v. Volume Servs. Am., Inc.*, 928 F.3d 1059, 1065 (D.C. Cir. 2019). The Amended Complaint nowhere alleges that information *about Doe or EPIC's members* was "actually disclosed" to a "third party," merely that Treasury and OPM have provided access to other government employees to data systems that *contain* Plaintiffs' records. Breach of confidence is thus not a "close historical or common-law analogue for their asserted injury." *TransUnion*, 594 U.S. at 424.

---

That is not what Defendants argued. *See* Def. Br. 8. Nor did Defendants argue that "unwanted intrusion into the home or other physical space is necessary for intrusion upon seclusion." Pl. Br. 8 (citing Def. Br. 10).

II.    **Plaintiffs Fail to State a Claim.**

A.    **Plaintiffs do not plead a plausible Privacy Act claim.**

In their opening brief, Defendants explained that Plaintiffs' Privacy Act claim fails on three independent grounds: (1) Plaintiffs do not plausibly allege that Doe's or EPIC's members' records have been disclosed; (2) even if there had been such a disclosure, it would have been expressly authorized by the Privacy Act as (i) an intra-agency disclosure to employees with a need to know or (ii) within a routine-use exception; and (3) Plaintiffs fail to allege cognizable Privacy Act relief. Def. Br. 11-15. On all three points, Plaintiffs' opposition falls short.

1.    By its terms, the Privacy Act restricts an agency's ability to "'disclose' any 'record' that is 'contained in a system of records . . . to any person, or to another agency.'" *Id.* at 11 (quoting 5 U.S.C. § 552a(b)). Here, Plaintiffs fail to allege that any of their records have been "disclosed" in the ordinary sense of that term, thus defeating a Privacy Act claim. *Id.* at 11-12.

Plaintiffs do not dispute that the Amended Complaint contains no such allegation. Instead, they double down on their theory that merely providing "access to a *system of records*" containing the records at issue is a disclosure. Pl. Br. 17-18 (emphasis added). This interpretation cannot be squared with the text of the Privacy Act, which distinguishes between a "record"—"any item, collection, or grouping of information about an individual that is maintained by an agency"—and a "system of records," which is "a group of any records under the control of any agency from which information is retrieved by . . . name . . . or by some . . . identifying particular." 5 U.S.C. § 552a(a)(4)-(5). Critically, the Privacy Act restricts only the disclosure of "record[s]" (*i.e.*, the information about individuals itself) rather than the overarching "system of records" within which that information is contained. *Id.* § 552a(b). Reading the two terms to mean the same thing, particularly where the statute defines them differently, would ignore the interpretive rule that "[w]here Congress uses certain language in one part of a statute and different language in another,

it is generally presumed that Congress acts intentionally." *Nat'l Fed. of Indep. Bus. v. Sebelius*, 567 U.S. 519, 544 (2019).

Plaintiffs' supporting authority does not compel a contrary result. In fact, the OMB Guidelines on which they primarily rely are in accord: Those guidelines provide that "[a] disclosure may be either the transfer of a *record* or the granting of access to a *record*." *Privacy Act Guidelines*, 40 Fed. Reg. 28,949, 28,953 (July 9, 1975) (emphases added). As just discussed, a record is not equivalent to a system of records under the plain text of the Privacy Act. That distinction underlies *Tolbert-Smith v. Chu*, 714 F. Supp. 2d 37 (D.D.C. 2010), which involved disclosure of *records* pertaining to the plaintiff. Indeed, she alleged that an agency employee intentionally made "records referring and relating to her disability" publicly accessible for the purpose of "retaliat[ing] against her for filing an administrative complaint." *Id.* at 43. Plaintiffs here allege no such public disclosure—or any disclosure, for that matter—of *their own records*. Plaintiffs' remaining legal authority consists of two other DOGE-related decisions, one of which the Fourth Circuit has stayed and both of which, as Defendants pointed out, are at odds with Privacy Act case law predating the present deluge of DOGE-related litigation. Def. Br. 12 n.3 (collecting cases). Rather than the incipient cases Plaintiffs cite, which have met with a lukewarm reception at the Supreme Court and Fourth Circuit, this Court should adhere to how the Privacy Act has traditionally been understood.[3]

**2.**     Even if mere access to a system of records containing Plaintiffs' records could constitute a disclosure of those records (which it cannot), Plaintiffs' claim would still fail because the Privacy

---

[3] Because access to a system of records alone is not disclosure of a record under the Privacy Act, Plaintiffs' attempt to distinguish between actual use of the systems and a putative policy allowing access to the systems, Pl. Br. 17 n.3, is a red herring—even setting aside the fact that, as explained below, Plaintiffs do not plausibly allege any such policy anyway, *see infra*, Section II.D.

Act expressly authorizes any such disclosures in the context of this case.

**a.** To start, it is undisputed that the Privacy Act permits disclosure of records to "officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties." *Id.* at 12 (quoting 5 U.S.C. § 552a(b)(1)). Plaintiffs argue that the Treasury and OPM DOGE teams do not have a need to know with respect to the data systems at issue, and that members of those teams are not agency employees. Plaintiffs are wrong on both counts.

**Need to Know.** The USDS EO instructs agency DOGE teams "to modernize technology and to '[m]aximize [e]fficiency and [p]roductivity,'" a task that necessarily requires "full and prompt access to all unclassified agency records, software systems, and IT systems." *Id.* at 12-13 (quoting USDS EO § 4). Plaintiffs do not seriously dispute this point; instead, they contend that "*each time* a DOGE affiliate was given access to PII, he 'must have examined the record in connection with the performance of duties assigned to him and [must have] had to do so in order to perform those duties properly.'" Pl. Br. 19 (emphasis added) (quoting *Bigelow v. Dep't of Def.*, 217 F.3d 875, 877 (D.C. Cir. 2000)). Here again, Plaintiffs conflate a record with the system of records in which it is contained. As the quoted language makes clear, *Bigelow* dealt only with access to the plaintiff's records—specifically, his personnel file. *See* 217 F.3d at 876. The case does not stand for the proposition that every instance of access to a system of records, which is all that Plaintiffs allege, must be supported by a demonstrated need to know all records in that system.[4]

---

[4] The preposterous consequences of such a reading should be apparent. Under Plaintiffs' interpretation, it is difficult to see how *any* federal employee could ever log into a system of records without risking Privacy Act liability, since no one needs access to *every* record on such a system to complete a discrete task on the system. And Plaintiffs' theory may be even broader: Since their definition of access means no more than the "ability to enter" a data system, Pl. Br. 17 n.3 (citation omitted), merely assigning an employee a login for a system of records could be the basis for liability.

Plaintiffs' fallback point that "an executive order cannot, by itself, 'license the defendants to violate the Privacy Act,'" Pl. Br. 19 (citation omitted), is a *non sequitur* because Defendants never argued that it could. Rather, Defendants simply explained that an executive order, such as the USDS EO, may create a need to know in the Privacy Act context—a commonsense point that even Plaintiffs' own authority appears to support. *See Bigelow*, 217 F.3d at 877-78 (holding that regulations created need to know plaintiff's records).[5]

**Agency Employees.** Despite their own allegations to the contrary, *see* Am. Compl. ¶¶ 15, 18, 43, 52-55, Plaintiffs argue that the agency DOGE teams are not *really* Treasury and OPM employees, Pl. Br. 20-21.[6] This contention relies on cherry-picking words and phrases out of the USDS EO to make it seem like the DOGE teams "are functionally supervised by DOGE," *id.* at 20, notwithstanding that those employees are (i) employed by Treasury and OPM, (ii) work at Treasury and OPM, and (iii) report to the heads of Treasury and OPM, *see* USDS EO § 3(b)-(c); Am. Compl. ¶¶ 15, 18, 43, 52-55. The fact that each agency head is tasked with ensuring that their respective DOGE team leads "coordinate their work with USDS" and "advise" the agency heads "on implementing the President's DOGE Agenda," USDS EO § 3(c), in no way affects the DOGE team members' employment status, and Plaintiffs cite no authority for such a point. On the contrary, Plaintiffs' primary authority explained that courts must be flexible when considering employees serving in temporary agency roles. *Jud. Watch, Inc. v. Dep't of Energy*, 412 F.3d 125,

---

[5] Plaintiffs' policy argument that allowing the President to delineate Executive workforce priorities via executive order somehow "frustrates the purposes of the Privacy Act" is based on generic, prefatory language from a Senate report that says nothing about the need to know under the Privacy Act. Pl. Br. 19-20. It is, at best, "the kind of murky legislative history that . . . can't overcome a statute's clear text and structure." *Azar v. Allina Health Servs.*, 587 U.S. 566, 581 (2019).

[6] The preposterous consequences of Plaintiffs' reading again should be apparent. Under Plaintiffs' interpretation, any federal employee working on an inter-agency and allegedly "functionally supervised" by another agency would risk Privacy Act liability.

132 (D.C. Cir. 2005) (holding that working group's use of detailees did not subject it to FOIA and explaining that "[a]gencies routinely detail employees . . . for a limited time or a specific task, and it is not for a court to burden that practice when not under statutory compulsion.").

**b.** Even if the DOGE teams' data-systems access did not fall within the need-to-know exception, it would be authorized as a "routine use." Def. Br. 14; *see* 5 U.S.C. § 552a(b)(3). Plaintiffs argue that the applicable routine use for BFS payment records is insufficient because Plaintiffs (supposedly) "allege Privacy Act violations arising from access to other systems." Pl. Br. 21. But Plaintiffs' allegations that sensitive personal data of "individuals" exists in other Treasury systems is irrelevant, as Plaintiffs do not allege any record that has been accessed or injury suffered in any system other than the BFS system; the two allegations Plaintiffs cite, Pl. Br. 21 (citing Am. Compl. ¶¶ 67, 69), merely recite the information stored in the BFS system. As for OPM's routine use, Plaintiffs argue that it does not extend to "federal employees." Pl. Br. 21 n.7 (emphasis omitted). But Defendants' routine-use justification comes into play only if the Court concludes that the OPM DOGE Team members are *not* employees of the agency, in which case they would look much more like the "contractors, grantees, or volunteers" contemplated by the relevant routine use. 77 Fed. Reg. 73,694, 73,698 (Dec. 11, 2012).

**3.**    Finally, Plaintiffs fail to allege cognizable Privacy Act relief. The statute expressly provides for money damages for "intentional or willful" disclosures of records, and for injunctive relief only to amend records or to allow an individual to access her records. Def. Br. 14 (citing 5 U.S.C. § 552a(g)(1)(A)-(B), (2)(A), (3)(A), (4)). Plaintiffs, on the other hand, seek primarily injunctive and declaratory relief on a disclosure theory to prevent the DOGE teams from using

agency data systems. *See* Am. Compl., Prayer ¶¶ 1-8.[7] Such an attempt to circumvent a statute's express limitation of remedies flies in the face of the rule that when "[a] 'statute provides certain types of equitable relief but not others, it is not proper to imply a broad right to injunctive relief.'" Def. Br. 14-15 (quoting *Parks v. IRS*, 618 F.2d 677, 84 (10th Cir. 1980)).

Plaintiffs do not, because they cannot, dispute that the Privacy Act provides only for limited injunctive relief that does not, as a textual matter, encompass their claims. Nonetheless, Plaintiffs argue that Congress's deliberate choice to limit injunctive relief under the Privacy Act is no limit at all, because the Court can just use "inherent equitable powers" to supplement Congress's judgment. Pl. Br. 22 (citation omitted).[8] If a court could provide any injunctive relief at will, as Plaintiffs suggest, then the Privacy Act's remedial provisions regarding injunctions would, of course, be entirely superfluous—a conclusion at odds with basic tenets of statutory interpretation. *Espinal-Andrades v. Holder*, 777 F.3d 163, 168 (4th Cir. 2015) ("[W]e must try to give every word in the statute meaning to avoid rendering its terms superfluous.").

\*    \*    \*

At bottom, Plaintiffs wish for the Privacy Act to be more of an impingement on the Executive's ability to do business than it really is. Several limitations evident from the statutory text foreclose Plaintiff's claim: It regulates only the disclosure of records, rather than systems of records; it broadly authorizes agency employees with a need to know to access those records; and it provides for injunctive relief only in narrow circumstances not present here. Plaintiffs' attempt to have this Court impose additional restrictions not found in the statute ignores the foundational

---

[7] Doe also seeks damages, Am. Compl., Prayer ¶ 9, but she fails to state a Privacy Act claim for all the reasons already discussed.

[8] In the alternative, Plaintiffs contend that they may obtain the injunctive relief they seek by the expedient of bringing a Privacy Act claim through the APA. Pl. Br. 21. For the reasons explained below, *infra*, Section II.D, Plaintiffs are mistaken.

principle that "[i]t is not for the judicial branch to second-guess the sober judgment of Congress." *Am. Fed'n of Gov't Emps. v. Off. of Special Counsel*, 1 F.4th 180, 185 (4th Cir. 2021).

### B.    Plaintiffs do not plead a plausible Internal Revenue Code ("IRC") claim.

Doe's claim under 26 U.S.C. § 6103(a) fails because she does not allege that Treasury has wrongfully inspected or disclosed *her* tax return or return information. *See* Def. Br. 15-17.

Doe argues in opposition that "disclosing a database containing her information *is* disclosing her information." Pl. Br. 23. As with the Privacy Act claim, it is not. Even assuming Treasury has "disclosed" its database (it has not), § 6103 does not apply to disclosures of "databases;" it applies only when Treasury "discloses any return or return information *with respect to a taxpayer*." 26 U.S.C. § 7431(a)(1); *McKenzie-El v. IRS*, 2020 WL 902546, at *12 (D. Md. Feb. 24, 2020) ("Section 7431 provides a civil cause of action for violations of § 6103."). The Amended Complaint nowhere alleges that Treasury "disclose[d] any return . . . information with respect to [Doe]" to a USDS employee or otherwise. In any event, Doe does not "specifically allege who made the alleged disclosures, to whom they were made, the nature of the disclosures, the circumstances surrounding them, and the dates on which they were made." *McKenzie-El*, 2020 WL 902546, at *13. And Doe is incorrect that the § 6103(h)(1) exception for intra-Treasury disclosures does not apply, as Plaintiffs' allegations that access has been provided to non-Treasury employees are entirely conclusory. *See* Def. Br. 17 & n.5.

### C.    Plaintiffs do not plead a plausible Fifth Amendment claim.

For three reasons, Defendants explained, Plaintiffs' Fifth Amendment due process claim fails as a matter of law. Def. Br. 18-20. Plaintiffs' response to each fails.

*First*, any right to informational privacy, which the Supreme Court has never expressly recognized, historically has been implicated only with respect to the government's compelled

collection of an individual's information in the first place or the government's disclosure to third parties of information about an individual that it already possesses. Def. Br. 18-19. Plaintiffs do not identify any case considering the right in the circumstances of this case, where the government is merely allowing government employees access to the systems of records on which such information is contained to complete government-approved and -directed work. Given the uncertain provenance of the right Plaintiffs claim, and in such "an 'uncharted area' as this, where 'guideposts for responsible decision-making . . . are scarce and open-ended,' the Court 'must be "reluctant to expand the concept of substantive due process."' Def. Br. 19 (quoting *Hawkins v. Freeman*, 195 F.3d 732, 738 (4th Cir. 1999)). There is no Fifth Amendment informational-privacy right in this context.

*Second*, to the extent that a right to informational privacy exists, the Supreme Court has made clear that statutory privacy protections—such as those in the Privacy Act and IRC—obviate any constitutional concern. *Id.* at 19-20. Plaintiffs' only response is that the government is not in fact complying with those statutes. Pl. Br. 25-26. Even taken at face value, this argument does not justify the creation of a free-standing constitutional claim. If the Court concludes that Plaintiffs have plausibly alleged Privacy Act and/or IRC violations, then the requirements of *those statutes* are the appropriate bases for Plaintiffs' challenge here. And, of course, if the Court concludes, as Defendants contend, that Plaintiffs have not plausibly alleged either a Privacy Act or an IRC claim, then *a fortiori* those allegations cannot make out a violation of *constitutional* magnitude.

*Third*, Plaintiffs fail to plausibly allege conduct that "shocks the conscience," as required to state a substantive due process claim premised on Executive action. Def. Br. 20. Plaintiffs respond, first, that they do not have to allege conscience-shocking behavior because they are challenging a putative violation of a fundamental liberty interest. *See* Pl. Br. 26. This argument

misunderstands the applicable test. The initial question is "whether the claimed violation is by executive act or legislative enactment." *Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 727 (E.D. Va. 2015) (quoting *Hawkins*, 195 F.3d at 738). "Where, as here, the government action at issue is an executive act," the plaintiff indeed must show "official conduct . . . which shocks the conscience." *Id.* (collecting cases). Otherwise, policy disagreements could give rise to Fifth Amendment violations and provide end-runs around statutory causes of action.

Plaintiffs' alternative argument that they have alleged conscience-shocking conduct also misses the mark. As Defendants explained, and Plaintiffs do not dispute, such conduct generally requires intent to harm. Def. Br. 20. No such intent to harm Plaintiffs is alleged here. Indeed, in a case about allegedly improper record access, Plaintiffs do not even allege that their own records have been accessed. A brief survey of applicable case law demonstrates that Plaintiffs' claim falls far short of the demanding threshold for conduct that shocks the conscience. *E.g.*, *Lewis*, 523 U.S. at 836 (police officer's "deliberate or reckless indifference to life in a high-speed automobile chase" resulting in death of passenger did not shock the conscience); *Rucker v. Harford Cnty., Md.*, 946 F.2d 278, 279-80, 281-82 (4th Cir. 1991) (police shooting of "innocent bystander" in attempt to apprehend fugitive did not shock the conscience); *Doe*, 132 F. Supp. 3d at 727-28 (expulsion of student through "flawed" administrative proceeding did not shock the conscience). This defect in Plaintiffs' claim is only compounded by the fact that they cannot plausibly allege that the data-systems access at issue is "arbitrary," "irrational," and "unjustified by any . . . governmental interest." *Rucker*, 946 F.2d at 281. Notwithstanding their nitpicking of the USDS EO, Plaintiffs never seriously contest that the stated purpose of the EO—to improve and modernize

14

the federal government's IT infrastructure—is a legitimate government interest.[9] Thus, Plaintiffs' due process claim fails as a matter of law.

### D.     Plaintiffs do not plead a plausible APA claim.

#### 1)     The agency database access alleged here is not agency action that is subject to APA review.

Plaintiffs' contrary-to-law and arbitrary-and-capricious APA claims (Counts IV-V) fail because they do not challenge discrete Treasury or OPM action but instead attack the agencies' programmatic activities that are not agency action subject to APA review, for all of the reasons in Defendants' opening brief. *See* Def. Br. 20-21. Plaintiffs' opposition does not counter this argument at all, *see* Pl. Br. 11-17, effectively conceding that they challenge Treasury and OPM's database-access practices in general, not specific and discrete conduct and thus challenge "exactly the sort of 'broad programmatic' undertaking for which the APA has foreclosed judicial review." *City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 433 (4th Cir. 2019) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)); *see Borromeo v. Mayorkas*, No. 1:22-cv-289, 2023 WL 2249966, at *5 (E.D. Va. Feb. 27, 2023) ("A party's failure to respond to an argument made in a motion to dismiss constitutes a concession of that argument.").

#### 2)     Plaintiffs have not identified a final agency action.

Even if Plaintiffs had identified judicially reviewable agency action, their contrary-to-law and arbitrary-and-capricious APA claims fail because they have not identified a *final* agency action. *See* Def. Br. 21-22.

In opposition, Plaintiffs first argue that they have identified a final agency action because

---

[9] Plaintiffs also cannot show that the challenged conduct is "literally incapable . . . of adequate rectification by any post-deprivation . . . remedies." *Rucker*, 946 F.2d at 281. To the extent that there have been any improper disclosures of Plaintiffs' records at issue, they may seek damages under the Privacy Act and IRC.

their "rights and obligations changed with respect to their sensitive data," as "[r]egulations permitting information disclosure 'certainly affect individual . . . confidentiality rights of those who submit [that] information.'" Pl. Br. 12 (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 303 (1979)). *Brown* shows why that argument fails. There, "[r]egulations promulgated by the Secretary of Labor provide[d] for *public disclosure* of information from records of the [Office of Federal Contract Compliance Programs]" and thus "certainly affect[ed] individual rights and obligations; they govern the public's right to information . . . and the confidentiality rights of those who submit information to OFCCP." *Brown*, 441 U.S. at 287, 303. As detailed above, Plaintiffs do not allege even intra-government disclosure, let alone public disclosure.

Plaintiffs next argue that "Defendants' actions also changed the agencies' position as to requirements for those seeking access to PII in Defendants' data systems, altering their 'own rights or obligations,' which is independently sufficient to constitute final action." Pl. Br. 12 (citing *Doe v. Tenenbaum*, 127 F. Supp. 3d 426, 461 (D. Md. 2012)). But Plaintiffs do not explain how Treasury and OPM granting federal employees access to Treasury and OPM databases is an action by which any "rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 578 U.S. 590, 597 (2016). *Doe* does not suggest otherwise. In *Doe*, the agency action at issue was the Consumer Product Safety Commission's statutorily required decision whether to publish on a publicly available internet database a CPSC report of a product safety issue. *Doe*, 127 F. Supp. 3d at 430, 433, 461. The CPSC's decision to do so thus "determined its own rights or obligations." *Id*. at 461. Nor does *Venetian Casino Resort, L.L.C. v. E.E.O.C.*, 530 F.3d 925 (D.C. Cir. 2008) change the analysis. *See* Pl. Br. 12. There, the agency action was the EEOC's "policy . . . permit[ting] . . . employees to disclose an employer's confidential information to potential ADEA plaintiffs without first

notifying the employer that its information will be disclosed." *Id*. at 927. Plaintiffs' APA challenge to Treasury and OPM's database access decisions, unlike the agency actions in *Brown*, *Doe*, or *Venetian Casino*, is instead a request for "general judicial review of [an agency's] day-to-day operations" not permitted under the APA. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 899 (1990).

> **3)    The agency database access alleged here is not contrary to law.**

Even if reviewable and final, Plaintiffs' contrary-to-law APA claim fails because Treasury and OPM's database access decisions do not violate the Privacy Act, 26 U.S.C. § 6103, or the Fifth Amendment, for all of the reasons stated here and in Defendants' opening brief.

The database access is also not contrary to the Federal Information Systems Modernization Act" ("FISMA") because the APA excludes from judicial review those agency actions that are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2), as set forth in Defendants' opening brief. *See* Def. Br. 22-24. Plaintiffs argue that FISMA is reviewable because it is like the statutes at issue in *Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480 (2015), and *Sluss v. United States Dep't of Just., Int'l Prisoner Transfer Unit*, 898 F.3d 1242 (D.C. Cir. 2018). *See* Pl. Br. 27-28. Not so. *Mach Mining* allowed "relatively barebones review" of the notice-and-conciliation requirement of 42 U.S.C. § 2000e-5(b) because the statute provided that the EEOC "shall serve a notice of the charge" and "shall endeavor . . . by informal methods of conference, conciliation, and persuasion." 575 U.S. at 494. And *Sluss* permitted "narrow" review of whether the Attorney General considered the best interests of a prisoner under Section 6 of the Execution of Penal Sentences treaty between the United States and Canada because it provided that the Attorney General "shall bear in mind all factors bearing upon the probability that transfer will be in the best interests of the Offender." 898 F.3d at 1246, 1252. FISMA does not contain such specific directions but instead provides the general requirement that the heads of agencies "shall be responsible for[] providing security protections commensurate with the risk and magnitude of the harm." 44 U.S.C. § 3554(a)(1)(A).

4)     **The agencies' decision to grant database access was not arbitrary or capricious**

Plaintiffs' arbitrary and capricious APA claim should be dismissed because Treasury and OPM are lawfully implementing the USDS EO and thus not acting "arbitrarily" or "capaciously." *See* Def. Br. 25. Defendants are not arguing, as Plaintiffs have it, *see* Pl. Br. 15-16, that "the agencies' implementation of [the USDS EO] should be insulated from APA review"[10] but instead arguing that because Treasury and OPM are granting database access to USDS agency teams *as directed by* the USDS EO, they are not acting "arbitrarily" or "capaciously," as that is the "satisfactory explanation for [the agencies'] action." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

5)     **Treasury and OPM were not required to engage in notice-and-comment.**

Treasury and OPM were not required to engage in notice-and-comment rulemaking under 5 U.S.C. § 553 (Count VI) because their database-access decisions are not rules that have the force and effect of law and thus subject to § 553. *See* Def. Br. 26-27. Plaintiffs' argument that those decisions are "new access policies," Pl. Br. 17, does not change the result because "general statements of policy, or rules of agency organization, procedure, or practice" are *excluded* from notice-and-comment. 5 U.S.C. § 553(b)(A).

E.     **Plaintiffs do not plead a plausible ultra vires or separation of powers claim.**

Plaintiffs' separation of powers claim fails because "appointing, overseeing, and controlling" employees of Executive agencies—such as Treasury and OPM—is quintessentially an Executive power, not a Legislative one. Def. Br. 28-30 (quoting *Seila Law LLC v. CFPB*, 591 U.S.

---

[10] Defendants assuredly have not "conce[ded] [the] merits," Pl. Br. 16, of Plaintiffs' arbitrary and capricious claim and instead specifically argue that Treasury and OPM are lawfully implementing the USDS EO.

197, 213 (2020)). Plaintiffs' response, which is melded with their ultra vires arguments, appears to be that the "[p]ower to establish agencies and determine their 'functions and jurisdiction' rests with Congress." Pl. Br. 28-30. This is true, but irrelevant. Although Congress no doubt has the power to create an agency, Defendants showed—and Plaintiffs fail to rebut—that agencies, once created, operate as an exercise of the Executive power. *See* Def. Br. 28-29. Plaintiffs' real gripe is that they believe the DOGE teams are not adhering to existing statutes regarding access to agency data systems. *See* Pl. Br. 30. But while Plaintiffs are free to "test the DOGE Teams' data access for 'adherence to statutory standards,'" claimed violations of statutes, standing alone, do not transgress the separation of powers. Def. Br. 29-30 (quoting *INS v. Chadha*, 462 U.S. 919, 953 n.16 (1983)). Because controlling Executive Branch employees' access to Executive Branch data systems is "not a 'constitutional function[] assigned to' Congress," Plaintiffs' claim fails. *Id.* at 30 (quoting *Morrison v. Olson*, 487 U.S. 654, 676 (1988)). Plaintiffs are thus also wrong that they have pleaded an ultra vires claim on the theory that no "statute . . . conceivably authorizes DOGE to exercise the authority that it has in this case." Pl. Br. 29. Because gatekeeping agency employees' access to agency data systems is not a Legislative function in the first place, it is of no import that there is no statute regulating such access.

### F.     Plaintiffs do not plead a plausible claim against GSA.

Finally, the Court should dismiss Plaintiffs' new claims against GSA and its Acting Administrator because Plaintiffs fail to allege any personal involvement of those defendants in their alleged injuries. Def. Br. 30. In a single footnote that cites no legal authority, Plaintiffs insist that their allegations that "DOGE is partly housed at GSA, and that GSA formally employs some DOGE affiliates, including DOGE's day-to-day leader" are sufficient to state a claim. Pl. Br. 28 n.10. But this argument only proves Defendants' point: Plaintiffs' claims challenge the DOGE teams' access to agency data systems at Treasury and OPM, yet there is no allegation that any of

the putative "DOGE affiliates" employed by GSA, "including DOGE's day-to-day leader," have been granted access to the Treasury and OPM data systems. Because Plaintiffs fail to plausibly allege that either GSA or its Acting Administrator have been personally involved in the claimed violations of Plaintiffs' rights or have caused injury to Plaintiffs, the claims against those defendants must be dismissed.

### III.    Plaintiffs cannot avoid dismissal by asking for discovery.

At multiple points, Plaintiffs contend that, should the Court conclude they have failed to state a claim, they should nonetheless be allowed to take discovery, Pl. Br. 18 n.5, 21—presumably so they can "determine if there is any factual basis for asserting claims against any Defendants," *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 709 (4th Cir. 2015). The Federal Rules do not license such a "fishing expedition." *Id.* On the contrary, it is a bedrock principle of federal pleading that "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *see Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 326 (4th Cir. 2001). So a "court cannot 'allow a complaint to survive a motion to dismiss [simply because] the pleadings [leave] open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery.'" *McCaffery v. Cnty.*, No. 1:23-CV-965 (RDA/JFA), 2024 WL 4045450, at *12 (E.D. Va. Sept. 4, 2024) (quoting *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 587 (4th Cir. 2015)) (alterations in original). Plaintiffs must plead a plausible claim *before* they may take discovery; discovery is not a tool to help craft a viable complaint in the first instance.

### CONCLUSION

The Court should dismiss Plaintiffs' Amended Complaint.

Dated: June 30, 2025

ERIK S. SIEBERT
UNITED STATES ATTORNEY

By: /s/ Jonathan T. Lucier
JONATHAN T. LUCIER, VSB No. 81303
Office of the United States Attorney
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Tel.: (804) 819-5400
Fax: (804) 771-2316
Email: jonathan.lucier@usdoj.gov

PETER B. BAUMHART
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel.: (703) 299-3738
Fax: (703) 299-3983
Email: Peter.Baumhart@usdoj.gov

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director

JOSEPH E. BORSON, VSB No. 85519
Assistant Director
Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel.: (202) 305-0747
Email: Joseph.Borson@usdoj.gov

*Attorneys for Defendants*